## Johnson v. Johnson.

May 9, 1947.

As modified on denial of rehearing October 17, 1947.

R. Monroe Fields, Judge.

616

 

J. P. Hobson, Jr. for appellant.

W. Sidney Trivette for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Appellee and appellant were married in March 1934. Appellant sought and was granted a divorce. She was given the major custody of their son, Charles Alvis, with an allowance of $75.00 per month as maintenance for her and the son. She had sought restoration of certain property, and equity in partnership business which the court did not grant. On her appeal here she presents three propositions: (1) Appellee's interest in their house was acquired by him in consideration of marriage and should be restored to appellant. (2) She is entitled to some equity in the partnership business, because of her very substantial investment in helping build up that business. (3) In view of appellee's earning power of $5,000 a year, she is entitled to a larger amount for maintenance for herself and son than the $75 allowed.

The property involved under proposition 1 was originally the home of Jack Charles, the father of appellant. In 1935 he deeded this property to his daughter, Ethel Hughes. According to the testimony of both the appellant and her sister, Ethel, the deed was entered into as an arrangement between the two of them. It appears that Ethel wanted to give the property to her sister, Maud, the appellant here. She testified: ''I made this deed to my sister, Maud, because she had no home and I wanted it to remain in our family. I put it in the name of C. A. Johnson because he was Maud's husband and he knew nothing about it before the deed was delivered.'' It appears further that Maud was insistent that she pay something for it. She was further insistent that a lien be retained in the deed in the sum of $2,500, but she and her husband executed note in the sum of $3,500 to Ethel Hughes. This deed was executed in March 1942. The appellee and wife moved into the property about 2 years prior thereto and continued to live therein

until their separation, without paying any rent for the time prior to the execution of the deed, and had paid no interest nor any amount on the principal after the deed was executed. Ethel Hughes, when asked about the note, stated that she had destroyed it. It appears that after the institution of the divorce proceedings, for reasons best known to him, the appellee presented Ethel Hughes with a certified check in full payment of the lien and interest, which, however, was returned to the appellee. The court below took the view that this property was purchased by appellee for valid consideration.

If this property was obtained without valuable consideration, it was obtained by reason of marriage and in consideration thereof, and pursuant to KRS 403.060 should be restored.

Section 425 of the Civil Code of Practice reads in part as follows:

"Every judgment for a divorce from the bond of matrimony shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof; and any property so obtained, without valuable consideration shall be deemed to have been obtained by reason of marriage."

We call specific attention to the words "directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof." In discussing this subject, in Pope v. Pope, 148 Ky. 30, 146 S. W. 410, 411, this court said:

"The language of this section is very broad, and, to make its meaning more effective, it provides that 'any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage.' Therefore when it appears that money or property has been received by the husband or wife from or through the other, the presumption arises that it was obtained by reason of marriage, and, if the property so received has not been disposed of, it must be returned to the donor in the judgment of divorce."

If appellee, prior to the institution of this action, had paid any sum on the property, he would be entitled

to such interest as the consideration paid by him bore to the whole. Pullins v. Pullins, 208 Ky. 800, 272 S. W. 51. Summarizing with respect to this proposition we have the following: Appellee had no part in the discussion relative to the deed to the property; he had lived therein as a home for two years and had paid no rent prior to the deed; he made no down payment on the property; he paid no interest after the deed was executed; and for obvious reason after this action arose, for property valued at from $6,000 to $10,000, he tendered payment of the amount of lien retained in the deed and interest thereon. In light of the above, we think this property was obtained by reason of marriage, if not directly, certainly indirectly, and should by all means be restored.

The next contention relates to appellant's investment in the business. In 1939 they leased the property now occupied by appellee and his brother. In December of the same year they obtained a joint deed for the property. They obtained a loan in the sum of $2,500 from the Pikeville National Bank and started into business. However, after a little while the building and garage equipment were entirely destroyed by fire. Appellee claims he turned to his wife for more help and that she refused to put more money in the business. Whereupon, he sought out his brother, Bill, to join him in a partnership. It appears that the appellant executed deed to Bill for her one-half of the property for the sum of $600, no part of which she received, but which was applied to the balance due on the $2,500 note obtained prior to the fire. The court allowed her no part of this claim. She was obligated with her husband on this $2,500 note. The $600 applied on it was as much for her husband as for her. Consequently, on this item the court should have allowed her $300.

Appellant also insists that the amount of money that she had advanced toward the business should have been taken into consideration. We cannot agree on this claim, since this business was destroyed by fire and no part of her investments inured to the benefit of her husband.

She insists further that the matter of the accounts receivable in the sum of $2,912, which were yet in hand

after the fire, should also have been considered. She testified that most of these accounts were collected but there is no evidence as to what was done with the money so collected. We cannot ascertain from this record whether the money was used for payment of debts created prior to the fire; for living expenses; placed back in the business, or for what purpose it was used. In basing a conclusion upon her more or less indefinite testimony, we would have to enter the realm of speculation as to this matter. Consequently, we will let it remain as the court below decided it.

The next proposition relates to the question of alimony. Appellant testified that she did not know what appellee's income was but that in 1944 he paid off a $4,000 note and purchased other equipment. This we would conclude was beyond his living. Appellee was asked how much money he made in the year 1945, and he answered: "Three Thousand six hundred and some dollars I think it was." It was stated in brief of appellant that appellee received $5,000 a year. This was not denied in appellee's brief. Appellee takes the position that appellant is a stenographer and works at a good salary. The evidence clearly shows appellant to be highly nervous and at that point in life where she needs consideration and kindness. This highly nervous condition seems to date back to the time when her little boy and his sister, about noon one day, slipped out from the yard to play near the river. The little girl was drowned. She says in her testimony that her husband continuously threw this matter up to her, blaming her for the drowning of the little girl. The fact is he even went so far in his counterclaim for divorce, on the grounds of cruel and inhuman treatment, as to allege the following:

"Defendant for his further counterclaim says that in the earlier part of their married life, she permitted their infant children to leave their home and play in the river at Elkhorn City, and that by reason of her negligence of said children one of them was drowned * * *."

While there is no necessity of going into the merits of the divorce action, this is stated merely to show a good and valid reason for her nervous condition. We

think the court not only should have taken this into consideration, but should also have considered the income of the husband and provided accordingly. We conclude that the maintenance for the appellee and her child should have been at least $150 per month.

Wherefore, the judgment is reversed with directions to enter judgment consistent with this opinion.